Truhan v. Bailey, No. 152-3-03 Wncv (Katz, J., June 1, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Washington County, ss.:                        Docket No. 152-3-03 WnCv


TRUHAN

v.

BAILEY


ENTRY


On the basis of 24 V.S.A. § 901(a), this court, at prior term, granted Plaintiff Truhan's motion to dismiss the counterclaim against him and also granted Defendant Bailey permission to amend that counterclaim to name the Town of Barre instead of Truhan. Now, the Town seeks to have the claims against it dismissed on the ground of municipal or sovereign immunity.

Initially, the court was struck by the improbability that the Legislature had enacted a statute immunizing officers and substituting vicarious liability on the town while the town's liability goes for naught because of its own immunity. That seems to be the sort of irrational statutory interpretation that should be avoided if possible. See Rowell v. Tunbridge, 118 Vt. 23, 27-28 (1953).

Upon reviewing the statute and relevant caselaw, we conclude that this case presents a more complex problem than earlier envisioned.

The statutory language at issue – "the action given against such officers" – is in fact very old. "By the statute passed in 1817, all actions which are given by law to the selectmen, must be brought in the name of the town." Middlebury v. Case, 6 Vt. 165, 168 (1834). That particular case dealt with a note, made payable to the selectmen; the town was seeking to collect on the note. The court ruled that the action must be sued out in the name of the town. This points us to the first sentence of § 901(a) (emphasis added): "Where an action is given *to* any appointed . . . municipal officer . . ., the action shall be brought in the name of the town in which the officer serves . . . ." Other early cases citing the statute involved a bond, Town of Fairfax v. Soule, 10 Vt. 154 (1838), and a contract, Town of Grand Isle v. Kinney, 70 Vt. 381 (1898). Interestingly, none of these early cases sounded in tort or involved issues of immunity. Whether its original purpose was to cover torts at all may be a question. See Soule, 10 Vt. at 156-57 (describing the purpose of the original enactment as distinctly procedural in nature).

Why should a tort victim, just for being a municipal officer, have to give up the personal remedy and hand it over to the town? Yet, if the second sentence of § 901(a) requires that the officer be personally immune from torts, with the town vicariously liable, does not the parallel language in the first sentence suggest that the town should get symmetrical treatment when the officer happens to be the plaintiff? That is, that the claim inures to the benefit of the town, not the officer? This, of course, does not explain why the Legislature would have created this statutory vicarious liability when its intention was that the vicarious party would enjoy its own immunity. We think the better answer is suggested by the early cases, evincing as they do a contemporaneous understanding of the circumstances under which the statute was enacted: This statute was enacted to ensure that rights and liabilities of the town be preserved as such, even though contracts or notes might be drawn in the name of incumbent selectmen.

More recently, the statute has been applied in the context of tort actions against municipal officers. In Holmberg v. Brent, 161 Vt. 153 (1993), the first of the contemporary tort cases addressing § 901, the Vermont Supreme Court states without explanation that § 901 "amounts to an assumption of the officer's liability" and nowhere discusses that § 901

2

had never before been so interpreted, at least in any cases, or acknowledges the difficulties attending such an interpretation.  The Court in <u>Holmberg</u> concluded that where § 901 and 24 V.S.A. § 1313 (allowing an incorporated village to indemnify its officers) overlap, § 1313 applies.  Having so ruled, of course, the Court was relieved of any need to explore the meaning of § 901 further.  Subsequent cases apply § 901 to immunize municipal officers but do not mention of any these issues.  Nevertheless, consistent with the description of § 901 in <u>Holmberg</u>, in 1995 the Legislature granted immunity to employees of conservation districts by stating that they "shall be immune from liability under the provisions of section 901 of Title 24 regarding municipal officers."  10 V.S.A. § 747a(b).  We have found no case or statute predating <u>Holmberg</u> similarly suggesting that the purpose of § 901 is to immunize officers from torts.  There have been no cases, such as this one, in which a plaintiff municipal officer seeks the benefit of § 901 against a counterclaim sounding in tort.

The new statute on tort claims against municipal employees, 24 V.S.A. § 901a, was enacted after the acts that form the basis for this civil action, August 10, 2002, and therefore does not apply.

Even were the old statute held to apply to Officer Truhan, and confer on him a measure of immunity, the latter would be an extension of municipal sovereign immunity.  Section 901, as applied in <u>Holmberg</u> and subsequent cases, does not per se provide a complete defense to a claim in the nature of tort arising out of the conduct of municipal officers; it merely requires that such an action be pursued against the town, not the town's officers.  The town's sovereign immunity then comes into play, as it has in this case.  In other words, § 901 brings the municipality's officers within the protection of the municipality's sovereign immunity; it does not create a variety of immunity personal to the officer and distinct from the officer's relation to the municipality.  Consequently, when Truhan raised § 901 as a defense to Bailey's counterclaim, he in essence was using the municipality's sovereign immunity as a sword in this litigation in aid of his own claim against Bailey.

Sovereign immunity is a shield, however, not a sword.  <u>United States v. Bankers Ins. Co.</u>, 245 F.3d 315, 320 (4th Cir. 2001) ("Sovereign

immunity does not permit the Government to sue a third party and then pick and choose the judicial constraints . . . with which it will abide."). When an entity entitled to sovereign immunity commences an action, it waives that immunity for any compulsory counterclaim arising out of the same occurrence or transaction. See Ruppenthal v. State of Wyoming, 849 P.2d 1316, 1321 (Wyo. 1993) (collecting cases and other authorities). Although the Vermont Supreme Court has never had occasion to rule on such a waiver of immunity by initiating the litigation, we are persuaded it is fully congruent with our court's statements on immunity. The purpose of according officials with immunity from suit is "to prevent exposing state employees to the distraction and expense of defending themselves in the courtroom." Cook v. Nelson, 167 Vt. 505, 509 (1998). Here, of course, it is Officer Truhan who made the decision to involve himself in the distraction and expense of litigation. While that is certainly his right, the underlying reason for affording him immunity is vitiated. To afford him immunity on the counterclaim would therefore not only be unfair it would elevate form over substance.

On the basis of the foregoing, we think dismissal of the counterclaim against Officer Truhan, personally, based on § 901(a), was ill considered.

The counterclaim against the Town of Barre is dismissed. The counterclaim against Officer Truhan is reinstated.


Dated at Montpelier, Vermont, _____, 20___.


_____
Judge

4